1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONTE CORMIER,

       Petitioner,

       v.

DAVID L. RUNNELS, warden,

       Respondent.

_____/

No. C 05-3924 MHP

**MEMORANDUM & ORDER**
**Re: Petition for Writ of Habeas Corpus**

       Petitioner Donte Cormier is currently a prisoner of the State of California incarcerated at High Desert State Prison.  On September 28, 2005, with the assistance of counsel, Cormier brought a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. section 2254 to challenge his conviction for second degree murder with associated firearms enhancement in violation of California Penal Code sections 187 and 12022.53(d).  The court issued an order to show cause on November 16, 2005, finding that the petitioner's claims for relief state cognizable claims for federal habeas relief.  In anticipation of an answer, petitioner prematurely filed a traverse on February 21, 2006.  Respondent filed an answer to petition for writ of habeas corpus and a memorandum of points and authorities in support of its answer on June 30, 2006.  Petitioner duly filed his traverse on July 31, 2006.

       Jurisdiction to address a petition for writ of habeas corpus exists in the district of incarceration and in the district of conviction.  See 28 U.S.C. § 2241(d).  Although venue is therefore proper in either the district of confinement or the district of conviction, "petitions challenging a conviction are preferably heard in the district of conviction."  Rosenberger v. Hill, 2006 U.S. Dist. LEXIS 33939 (N.D. Cal. 2006) (Fogel, J.) (citing Laue v. Nelson, 279 F. Supp. 265,

1    266 (N.D. Cal. 1968) (Weigel, J.)).  Venue lies in this district because petitioner was convicted in

2    Alameda County Superior Court.  Now before the court is consideration of the merits of petitioner's

3    habeas petition.

4         Having considered the parties' arguments and submissions, and for the reasons set forth

5    below, the court enters the following memorandum and order.

6

7    <u>BACKGROUND</u>

8         Petitioner was convicted of second degree murder with associated firearms enhancement in

9    violation of California Penal Code sections 187 and 12022.53(d).  The California Court of Appeal

10   summarized the facts in this case as follows:

11        Rommell Jones lived with his sister, Veopa Owens, and their mother in
     Oakland.  On the evening of February 21, 2002, Jones returned home as Owens was

12   eating dinner.  He asked her to take him to the store.  He did not appear to her to be
     intoxicated and was acting normally.  Owens drove Jones toward a liquor store at

13   57th Avenue and Foothill Boulevard.  Jones told her that earlier that day, defendant
     'tried to buck up to him' or 'tr[ied] to stick his chest up.'  When they arrived at the

14   intersection of Laverne and Foothill, Jones told her to stop the car.  Jones jumped out
     of the car and walked toward five or six people including defendant, Marlin Salter

15   and Darnell, who were standing on the corner.  When Jones approached them,
     defendant ran across Foothill toward the car wash.  Jones walked toward defendant

16   but then turned around and went back to Owens's car.  He took off his topcoat and
     put it on the hood of the car.  The people at the corner were laughing.

17
          Jones was talking; he took his shirt out of his pants and turned around in a

18   circle.  He raised his hands up above shoulder level.  Defendant then ran from across
     the street and shot Jones three times in the back.  When Owens realized that Jones

19   had been shot, she chased defendant with her car and hit him with the left front side
     of the car.  Defendant got out from under the car and fled.  Owens testified that she

20   had never seen defendant with a gun.  She admitted that she failed to declare some
     income when applying for county aid and that she attempted to cash a stolen check.

21
          Anthony Frederick testified that he was at the corner of Laverne and Foothill

22   and witnessed the shooting.  He could not identify defendant as the shooter.  He
     testified that he saw Jones arguing with a young man earlier in the day.  That evening,

23   the young man shot Jones after Jones jumped out of his sister's car and yelled, 'So
     you back.  What you got?  Who you bring, your mama?  What you got?  What [you]

24   going to do?  You know, here I am.'  He admitted that he was previously convicted of
     possession of a controlled substance.  He also admitted that he had a pending case for

25   simple possession and averred that the district attorney's office had not made him any
     promises concerning that case.

26
          Jones died of multiple gun shot wounds.  His blood alcohol level was .13

27   percent and he tested positive for cocaine.  The police found a gun on the south side

28

of the 5600 block of Foothill.  A criminalist testified that two bullets recovered from Jones during the autopsy could have been fired from the gun.  Defendant surrendered to the police on June 1, 2002, over three months after the shooting.

In defense, defendant testified that on February 21, 2002, he was visiting the area known as 57th[1] where he grew up to celebrate the recent birth of his son.  He was drinking with friends; Jones, who defendant had known since he was a child, was also there.  Jones was also drinking alcohol.  Jones walked up to defendant and said Jones was a gangster and a killer and called defendant, 'a punk little bitch.'  While they exchanged words, the people around them were laughing.  Jones began to yell and spit in defendant's face.  He threatened defendant, saying he would take off his belt.

Defendant had consumed three or four wine drinks and began to get frightened.  He left the area.  He returned to the area around 7:00 p.m.  Jones was not there.  Defendant was hanging out with Salter, Darnell, G, JR, and a few others, when a white car pulled up and made a sudden stop.  Jones jumped out of the car and reached into his coat pocket.  Defendant saw Jones reach for something that appeared to be a gun.  Defendant described the object as long and black.  Salter had told defendant earlier than Jones was looking for him with a gun.  JR handed defendant a gun.[2]  Defendant ran as Jones pursued him.  Defendant turned 'halfway around' and shot Jones.  He shot Jones out of fear for his life.  He could not recall how many shots he fired.  He had not previously handled a gun.  Defendant ran toward the car wash and fell.  He realized that the white car was trying to run over him.  The car hit him but he managed to run away.

Cal. Ct. App. Op. at 2–3 (endnotes added).

Following his conviction for second degree murder, petitioner was sentenced in the Alameda Superior Court to forty years to life imprisonment.  Petitioner alleges that his Fifth Amendment due process rights and Sixth Amendment rights to effective assistance of counsel have been violated.  Specifically, petitioner raises four claims.  First, petitioner contends that the trial court's exclusion of evidence of the victim's prior criminal convictions deprived petitioner of his due process rights to present a defense, that of imperfect self-defense.  Second, petitioner claims that trial counsel's failure to locate or subpoena two witnesses deprived him of his Sixth Amendment right to effective assistance of counsel and of his Fifth Amendment right to due process.  Third, petitioner claims that trial counsel's failure to argue imperfect self-defense in closing argument constituted a deprivation of his Sixth Amendment right to effective assistance of counsel and of his Fifth Amendment right to due process.  Fourth, petitioner claims that the cumulative effect of multiple errors produced a denial of due process.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    EXHAUSTION

2        Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

3    either the fact or length of their confinement are required first to exhaust state judicial remedies,

4    either on direct appeal or through collateral proceedings, by presenting the highest state court

5    available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

6    federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies

7    were exhausted for the claims asserted in the petition.

8

9    LEGAL STANDARD

10        This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

11   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

12   Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas corpus

13   petitions filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996

14   ("AEDPA") are subject to AEDPA's provisions. See Lindh v. Murphy, 521 U.S. 320, 326–27

15   (1997). A federal court may not independently review the merits of a state court decision without

16   first applying AEDPA standards. Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (rejecting a series of

17   Ninth Circuit cases requiring "federal habeas courts to review the state court decision de novo before

18   applying AEDPA standard of review"). Under the AEDPA, habeas relief can be granted only when

19   the state court adjudication of the merits of a claim "(1) resulted in a decision that was contrary to, or

20   involved an unreasonable application of, clearly established Federal law, as determined by the

21   Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

22   determination of the facts in light of the evidence presented in the State court proceeding." 28

23   U.S.C. § 2254(d).

24        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

25   arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

26   decides a case differently than this Court has on a set of materially indistinguishable facts."

27

28

                                                    4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (Justice O'Connor writing for the majority of the

2    Court in Part II of the opinion).

3         "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

4    state court identifies the correct governing legal principle from this Court's decisions but

5    unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "[A] federal

6    habeas court may not issue the writ simply because that court concludes in its independent judgment

7    that the relevant state-court decision applied clearly established federal law erroneously or

8    incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A "federal habeas court

9    making the 'unreasonable application' inquiry should ask whether the state court's application of

10   clearly established federal law was 'objectively unreasonable.'" Id. at 409.  The petitioner bears the

11   burden of showing that the state court's decision was unreasonable.  See Woodford v. Viscotti, 537

12   U.S. 19, 25 (2002).

13        A petitioner is entitled to an evidentiary hearing if he or she shows that:

14        (A) the claim relies on –

15        (i) a new rule of constitutional law, made retroactive to cases on collateral review by
          the Supreme Court, that was previously unavailable; or
16
          (ii) a factual predicate that could not have been previously discovered through the
17        exercise of due diligence; and

18        (B) the facts underlying the claim would be sufficient to establish by clear and
          convincing evidence that but for constitutional error, no reasonable factfinder would
19        have found the applicant guilty of the underlying offense.

20   Williams v. Warden, 529 U.S. 420, 429–30.

21

22   DISCUSSION

23        Where a plaintiff seeks to challenge either the fact or duration of his commitment, his sole

24   remedy is to file a petition for writ of habeas corpus after he exhausts state judicial remedies.  See

25   Wilkinson v. Dotson, 544 U.S. 74, 79 (2005) (citing Preiser v. Rodriguez, 411 U.S. 475, 490–91

26   (1973)).

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Petitioner alleges that his Fifth Amendment due process rights and Sixth Amendment rights

2   to effective assistance of counsel have been violated.  Specifically, petitioner raises four claims.

3   First, petitioner contends that the trial court's exclusion of evidence of the victim's prior criminal

4   convictions deprived petitioner of his due process rights to present a defense, namely that of

5   imperfect self-defense.  Second, petitioner claims that trial counsel's failure to locate or subpoena

6   two witnesses deprived him of his Sixth Amendment right to effective assistance of counsel and of

7   his Fifth Amendment right to due process.  Third, petitioner claims that trial counsel's failure to

8   argue imperfect self-defense in closing argument constituted a deprivation of his Sixth Amendment

9   right to effective assistance of counsel and of his Fifth Amendment right to due process.  Fourth,

10  petitioner claims that the cumulative effect of multiple errors produced a denial of due process.

11   In response, respondent contends that petitioner has not suffered any deprivation of

12  constitutional rights supporting habeas corpus relief.  Specifically, respondent highlights that since

13  the instant petition was filed after April 24, 1996, it is subject to AEDPA.  Respondent argues that

14  petitioner has failed to show that the state court proceeding was contrary to or an unreasonable

15  application of clearly established Supreme Court precedent.  Accordingly, respondent requests that

16  the petition for writ of habeas corpus be denied.

17

18  I.   Exclusion of Evidence of Victim's Prior Crimes

19   Petitioner contends that his rights to present a defense and to a fair trial were denied when

20  the trial court excluded evidence surrounding the victim's criminal background.  Specifically the

21  prosecutor wanted to exclude four criminal matters: (1) a 1992 felony conviction for possession of a

22  firearm in violation of California Penal Code section 12020(a); (2) a 1996 felony conviction for

23  possession of a controlled substance in violation of California Health and Safety Code section

24  11350(a); (3) a 2001 misdemeanor conviction for possession of a weapon by a person convicted of a

25  felony in violation of California Penal Code section 12021(a)(1); and (4) a 2002 arrest for violations

26  of California Penal Code sections 530.5 and 532(a).

27

28

6

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   The victim's 1992 felony conviction stemmed from an incident where Oakland police

2   apprehended him in possession of a sawed-off shot gun allegedly in preparation of an armed robbery

3   and spat at an officer when arrested.  During trial, petitioner's counsel maintained that the conviction

4   should be entered as evidence to demonstrate the victim's character for violence pursuant to

5   California Evidence Code section 1103.[3]  The prosecutor countered that the arresting officer in 1992

6   case was Chuck Mabanag, one of the three Oakland police officers who were defendants in the

7   "Riders" trial, facing charges of allegedly planting evidence.  The prosecution indicated that if

8   subpoenaed to testify, Officer Mabanag would likely take the Fifth and counsel would have to cross-

9   examine him on issues surrounding the Riders trial, since this went directly to the victim's

10   credibility, and this would result in an undue expenditure of the court's time.

11   Excluding evidence is "unconstitutionally arbitrary or disproportionate only where it has

12   infringed upon a weighty interest of the accused." U.S. v. Scheffer, 523 U.S. 303, 308 (1998).

13   "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the

14   Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution

15   guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v.

16   Kentucky, 476 U.S. 683, 690 (1986) (citations omitted).  The Compulsory Process Clause of the

17   Sixth Amendment preserves the right of a defendant in a criminal trial to have compulsory process

18   for obtaining a favorable witness.

19   The right to offer the testimony of witnesses, and to compel their attendance, if
    necessary, is in plain terms the right to present a defense, the right to present the
20   defendant's version of the facts as well as the prosecution's to the jury so it may
    decide where the truth lies.  Just as an accused has the right to confront the
21   prosecution's witnesses for the purpose of challenging their testimony, he has the
    right to present his own witnesses to establish a defense.  This right is a fundamental
22   element of due process of law.

23   Washington v. Texas, 388 U.S. 14, 19 (1967).  This right was held applicable to the states through

24   the Fourteenth Amendment.  See id. at 18–19.

25   However, the Sixth Amendment right to present relevant testimony "may, in appropriate

26   cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v.

27   Mississippi, 410 U.S. 284, 295 (1973); see Taylor v. Illinois, 484 U.S. 400, 410–11 (1988) (finding

28

7

1   right to compulsory process is not absolute).  Thus, the accused's compulsory process right may be

2   limited by evidentiary rules.  See id. at 410 (finding defendant does not have an unfettered right to

3   offer evidence that is incompetent, privileged or otherwise inadmissible under standard rules of

4   evidence; the exclusion of evidence does not violate the Due Process Clause unless it offends some

5   fundamental principle of justice).

> [T]he Constitution leaves to the judges who must make these decisions 'wide
> latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or
> poses an undue risk of 'harassment, prejudice, [or] confusion of the issues'. . . .
> Moreover, [the Court has] never questioned the power of States to exclude evidence
> through the application of evidentiary rules that themselves serve the interests of
> fairness and reliability--even if the defendant would prefer to see that evidence
> admitted.

10   Crane, 476 U.S. at 689–90 (citations omitted).

11       The Supreme Court has ruled that the exclusion of evidence does not violate due process if

12   "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

13   issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

14   presentation of cumulative evidence."  Montana v. Egelhoff, 518 U.S. 37, 42-43 (1996) (quoting

15   Fed. R. Evid. 403).  Petitioner's counsel has admitted that petitioner was unaware of the 1992

16   incident, involving the sawed-off shotgun.  The trial court ruled that since petitioner himself was not

17   privy to the 1992 incident, the evidence did not relate directly to his state of mind at the time of the

18   victim's death.  The California Court of Appeal found that the trial court had not abused its

19   discretion under California Evidence Code section 352 when it excluded evidence of the victim's

20   prior section 12020 convictions.  Specifically the Court of Appeal noted:

> [w]hile evidence of Jones's prior convictions was relevant on the issue of defendant's
> state of mind and was admissible under Evidence Code section 1103 to prove that
> Jones's conduct at the time of the shooting was in conformity with his character, the
> admissibility of the evidence was subject to Evidence Code section 352.  'Section 352
> directs 'the trial judge to strike a careful balance between the probative value of the
> evidence and the danger of prejudice, confusion and undue time consumption.  That
> section requires that the danger of these evils substantially outweigh the probative
> value of the evidence . . . .' (People v. Wright, 39 Cal. 3d 576, 588 (1985)).

25   Cal. Ct. App. Op. at 5.  The Court of Appeal further emphasized that proof of the conviction would

26   involve an undue consumption of time and confusion of the issues and that the incident had a

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  relatively low probative value.  Since the evidence did not directly support petitioner's claim that he

2  had acted in self-defense, the Court of Appeal concluded that the "it was not reasonably probable

3  that admission of this evidence would have had an effect on the verdict."  Cal. Ct. App. Op. at 7.

4       Petitioner's reliance on DePetris v. Kuykendall, 239 F.3d 1057 (9th Cir. 2001) is misplaced.

5  In DePetris, a wife claimed imperfect self-defense for shooting and killing her husband while he was

6  asleep in bed.  See id. at 1058.  The California Court of Appeal concluded that although the victim's

7  journal, which contained accounts of his violent behavior towards his first wife and others, was

8  admissible, its exclusion by the trial court was harmless because "the jury had heard other evidence

9  relating to [the victim's] propensity for domestic violence."  Id. at 1059.  Following the district

10  court's denial of a writ of habeas corpus, the Ninth Circuit overturned, concluding that "because of

11  the subjective aspect of imperfect self-defense, the trial court's erroneous preclusion of both the

12  journal and especially petitioner's own testimony about having read it — to explain why she did

13  what she did — was a crucial ruling."  See id.

14       Here in contrast, the petitioner proceeded at trial on both defenses of self-defense and

15  imperfect self-defense.  He testified that he was both frightened of the victim and shot him out of

16  fear for his life, but at the same turn noted that his earlier altercation with the victim had not

17  frightened him and that he was unaware that the victim was carrying a gun.

18       Imperfect self-defense requires that an individual possess an "actual, honest belief" that he or

19  she is in "imminent danger even if such a belief was objectively unreasonable."  Id. at 1058.  Under

20  California law, imperfect self-defense does not offer a complete defense to homicide, but if

21  successfully presented it can reduce the charge from murder to manslaughter.  See id.  Unlike the

22  victim in DePetris, who had first hand knowledge of the victim's propensity for violence, petitioner

23  lacked any knowledge of the victim's prior convictions.  The success of an imperfect self-defense

24  theory depends "almost entirely on the jury's believing petitioner's testimony about . . . state of

25  mind at the time of the shooting."  Id. at 1062.  Since the petitioner has conceded that he lacked any

26  knowledge of victim's prior convictions or whether or not the victim carried a gun on his person,

27

28

9

1    excluding evidence related to the victim's prior convictions had no impact on demonstrating the

2    petitioner's state of mind at the time of the shooting.

3         Petitioner's assertion of self-defense is premised on the notion that the victim had a

4    reputation for weapons possession and therefore the trial court should have permitted the

5    introduction of evidence surrounding the 1992 weapons incident.[4]  However, again by petitioner's

6    own admission, he was unaware of the 1992 altercation with the Oakland police and he did not know

7    whether or not the victim carried a gun, and therefore admission of the evidence of the 1992 incident

8    would not have aided petitioner's defense.

9         In his Reply Memorandum in Support of Petition for Writ of Habeas Corpus (the

10   "Traverse"), petitioner cites People v. Shoemaker, 135 Cal. App. 3d 442 (1982) to argue that

11   specific acts of violence by the victim are admissible under section 1103 of the Evidence Code to

12   show that the victim was the aggressor and that it is unnecessary for the defendant to have been

13   aware of the specific acts in question.  See Traverse at 2.  However, a close reading of Shoemaker

14   reveals that it simply highlights that in the time period before the advent of section 1103, "character

15   trait[s] could be shown by reputation evidence, but not by evidence of specific acts of the victim on

16   third persons."  Shoemaker, 135 Cal. App. 3d at 446 (quoting People v. Rowland, 262 Cal. App. 2d

17   790, 797 (1968)).  Under section 1103, however, evidence related to the specific acts of the victim

18   with respect to third persons is now admissible to prove the aggressive and violent character of the

19   victim.  Id.  Yet this fails to bolster petitioner's argument that the omission of evidence surrounding

20   the victim's violent past unfairly prejudiced his defense.

21        Petitioner fails to demonstrate that he had any direct knowledge, either through personal

22   experience or knowledge of specific acts by the victim on third parties, that would warrant the

23   admissibility of evidence concerning the victim's past violent acts.

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

B.    Relevance of Excluded Evidence Outweighed by its Prejudicial Effect

Even assuming arguendo that the evidence had some probative value, its exclusion under Evidence Code section 352 was not an unreasonable application of clearly established federal law. California Evidence Code section 352 is a rather commonplace kind of evidentiary rule allowing the exclusion of evidence where its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, be unduly prejudicial, confuse the issues or mislead the jury.  Section 352 itself does not offend due process or the right to present a defense. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (holding that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").

The application of section 352 to exclude the evidence in this case did not result in a constitutional violation.  Neither the trial court nor the appellate court mechanically applied section 352 to keep out reliable evidence.  Both courts considered the surrounding circumstances and reached their conclusion that any relevance was outweighed by the prejudicial effect.  Petitioner was unaware of the victim's prior convictions for possession of weapons, including the 1992 incident involving the sawed-off shotgun.  Furthermore the arresting officer in the 1992 incident was simultaneously involved in ongoing litigation.  Cross-examination of the officer would have likely necessitated questions related to the nature of those proceedings and an unnecessary waste of the court's time and resources.

Petitioner maintains that respondent has failed to conclusively demonstrate that presenting evidence of the victim's prior acts of violence would involve an "undue consumption of time." Traverse at 3.  Petitioner contends that defense presentation of the evidence would not take a lot of time, but rather  "the prosecutor's threatened extensive cross-examination of officer Mabanag if he testified on the 1992 shotgun possession incident," would result in an undue consumption of the court's time.  Id.  Also, petitioner argues that rather than call officer Mabanag to the stand, trial counsel could have simply called the officer who was with officer Mabanag at the time the victim

UNITED STATES DISTRICT COURT
For the Northern District of California

1    was arrested.  See Traverse at 3–4.  However, the prosecution might still have chosen to call officer

2    Mabanag to corroborate the sequence of events as detailed by his accompanying officer at the time

3    of victim's arrest.  Moreover, if officer Mabanag would in all likelihood invoke his Fifth

4    Amendment right not to testify if called to the stand, it is unclear how this advances petitioner's

5    claim for self-defense.  First, officer Mabanag would unlikely offer any direct testimony on point

6    that could corroborate petitioner's claims concerning the victim's violent past.  Second, there

7    continues to be the issue that petitioner was unaware of this shotgun incident at the time of his

8    altercation of the victim and therefore this fails to advance petitioner's claim that this impacted his

9    state of mind at the time of the shooting..

10   Finally, even if the trial court erred in excluding the evidence, any error would have been

11   harmless.  A federal habeas petitioner is not entitled to relief unless the trial error "had substantial

12   and injurious effect or influence in determining the jury's verdict."  See Brecht v. Abrahamson, 507

13   U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  The error

14   must have resulted in "actual prejudice."  Id. (citation omitted).  The jury was not given an

15   inaccurate picture of the victim by virtue of the exclusion of the evidence of the 1992 shotgun

16   incident.  There was extensive evidence available from other witnesses to provide information on the

17   victim's history of weapons possession and aggressive and violent conduct.

18   The state appellate court's decision was not contrary to or an unreasonable application of

19   clearly established Supreme Court authority on the constitutional rights to present a defense and fair

20   trial.  Petitioner is not entitled to the writ on this claim.

21

22   II.    Ineffective Assistance of Counsel

23   Petitioner contends he received ineffective assistance of counsel in that counsel failed to

24   locate, interview and subpoena four eyewitnesses to the events on the day of the homicide, failed to

25   adequately cross-examine the victim's sister during trial, failed to argue imperfect self defense

26   during closing arguments, and failed to adequately argue for admission of the victim's weapons

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

possession convictions.  Petitioner also contends that the cumulative effect of trial counsel's omissions resulted in a denial of due process.

The Sixth Amendment to the U.S. Constitution guarantees not only assistance, but effective assistance, of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  Id.  To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was "deficient," i.e., his "representation fell below an objective standard of reasonableness" under prevailing professional norms, id. at 687–88, and (2) prejudice flowed from counsel's performance, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  The relevant inquiry under Strickland is not what defense counsel could have done, but rather whether his choices were reasonable.  See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (emphasizing that "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."); see also Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999).

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  See Strickland, 466 U.S. at 687.  The defendant must show that counsel's representation fell below an objective standard of reasonableness.  See id. at 688.  Judicial scrutiny of counsel's performance must be highly deferential, however, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See id.

Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  See id.  The test for prejudice is not outcome-determinative, i.e., defendant need not show that the deficient conduct more likely than not altered the outcome of the case; however, a simple showing that the defense was impaired is also not

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

sufficient.  See id. at 693.  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see Brown v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998) (failure to investigate and present alibi witnesses prejudicial where, without corroborating witnesses, defendant's bare testimony left him without a defense); United States v. Span, 75 F.3d 1383, 1390 (9th Cir. 1996) (failure to request jury instruction prejudicial where reasonable probability defendants would have been acquitted with instruction); U.S. v. Palomba , 31 F.3d 1456, 1465–66 (9th Cir. 1994) (error that may increase defendant's sentence prejudicial even if reversal would not shorten prospective jail time); Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) (counsel's failure to interview individual who had confessed to crime and whom three eyewitnesses had identified as culprit prejudicial); Smith v. Ylst, 826 F.2d 872, 875 (9th Cir. 1987) (mental incapacity of counsel does not require per se reversal of conviction; defendant has burden to point to specific errors), cert. denied, 488 U.S. 829 (1988).

    A.    Failure to subpoena and present exculpatory witnesses

Petitioner contends that he gave his wife the names of three or four eyewitnesses to the events on the day of the homicide, who subsequently gave the list of names to petitioner's trial counsel.  However, petitioner alleges that trial counsel made no effort to locate, interview or subpoena those witnesses.

The Ninth Circuit has held that trial counsel's failure to present credible alibi witnesses can be prejudicial to a defendant under Strickland.  See Lord v. Wood, 184 F.3d 1083, 1095–96 (9th Cir. 1999) (also finding counsel's performance was deficient and reversing denial of habeas petition).  In its analysis of prejudice, the court in Lord weighed the strength of the state's case against the alibi testimony offered at the habeas evidentiary hearing.  See id.  The court noted that the state's case was largely circumstantial and included no eyewitnesses.  See id.  In contrast, the court detailed numerous indicia of the reliability of the alibi witness testimony.  See id.  Balancing the weakness of the state's case against the strength of the alibi witnesses, the court found prejudice.  See id. at 1085

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1   ("[I]t is impossible to judge any one piece of evidence without understanding the rest of the case.").

2   In accord with the Ninth Circuit's <u>Lord</u> analysis, this court will balance the strength of the evidence

3   incriminating petitioner against the weight of his evidence.

4       Petitioner argues that he gave his wife a list of four eyewitnesses to the events of the days of

5   the homicide, JR, Damont Brown, Martin Salters, and George Abram, which she passed on to trial

6   counsel.  However, trial counsel made no effort to locate these individuals.  Following the

7   completion of the trial, two of the witnesses, Brown and Abram, submitted declarations in a

8   companion habeas corpus proceeding in state court, asserting that they had never been contacted by

9   petitioner's counsel, but were available to testify on petitioner's behalf.  Although the witnesses

10   were not alibi witnesses, petitioner argues that their testimony would have provided substantial

11   corroboration to a defense of self-defense or imperfect self-defense.  Petitioner maintains that

12   counsel's failure to present these witnesses was extremely prejudicial to petitioner's case.

13       The California Court of Appeal reviewed the record and rejected defendant's claim that his

14   counsel failed to investigate and interview witnesses.

15         To the contrary, the record demonstrates that counsel sought to interview Salter but
16         learned from defendant's family that Salter would not cooperate and would refuse to
          testify if called as a witness.  Defense counsel also informed the court during in
17         limine motions that Salter's position was typical of other potential witnesses that
          were at the scene.  'None of them have been cooperative outside of giving their initial
18         statement on February 21 to the investigating homicide detectives.'

19   Cal. Ct. App. Op. at 9.  The Court of Appeal's decision that defense counsel took appropriate steps

20   to locate and interview witnesses, does not rise to the level of being contrary to clearly established

21   Supreme Court authority.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  While two of the witness submitted

22   declarations post-trial indicating a willingness to testify on petitioner's behalf, at the time of the trial

23   defense counsel made an attempt to locate witnesses and received word that one of the witnesses,

24   Salter, was not willing to cooperate and that this was indicative of the attitude of most of the

25   available witnesses.

26       In any event, as noted by the California appellate court, testimony by the potential witnesses

27   would have been of no assistance in disputing the evidence at trial because none of the witnesses

28

1    actually saw the shooting, but rather their knowledge was restricted to an earlier encounter between

2    petitioner and the victim, having seen the victim and petitioner just before the shooting and hearing

3    the shots at the time of the incident.  Petitioner claims that the omission of the eyewitnesses

4    compromised his self-defense claims, since two of the witnesses could have provided valuable

5    information to verify that petitioner had reason to fear the victim because of earlier threats, and

6    knew that the victim was a violent person and had a tendency to carry a gun.

7         However, the record indicates that despite petitioner's claims that he fired three shots while

8    attempting to get away from the victim, the victim sustained bullet wounds in his right lower mid

9    back, and the left side of his chest.  To establish prejudice caused by the failure to call a witness, a

10   petitioner must show that the witness would likely have been available to testify, that the witness

11   would have given the proffered testimony and that the witness's testimony created a reasonable

12   probability that the jury would have reached a verdict more favorable to the petitioner.  See Alcala v.

13   Woodford, 334 F.3d 862, 872–73 (9th Cir. 2003).  Based on the evidence available in the record,

14   there is no indication that the omission in calling the four potential witnesses would have reasonably

15   led to a different result.  None of the witnesses could provide evidence on the victim's conduct at the

16   exact time of shooting and explain why the victim sustained gun shots to his back if the victim was

17   acting in self-defense.  The petitioner has failed to meet his burden to sustain this claim for a writ.

18

19         B.    Inadequate Cross-examination of the Victim's sister

20        Petitioner argues that trial counsel did not adequately cross-examine Veopa Jones, the

21   victim's sister.  In particular the petitioner argues that trial counsel failed to adequately elicit

22   testimony from the victim's sister that the victim pulled something out of his pants prior to the

23   shooting.  At the petitioner's preliminary hearing, the victim's sister testified that when the victim

24   told her that the petitioner was "bucking up" to him, she responded, "[j]ust take off your belt, whoop

25   him, send him home to his mom and dad, like you always do." Petitioner argues that counsel failed

26   to extract this testimony from the victim's sister at trial and that this testimony might have

27   corroborated petitioner's own testimony that he saw the victim pull a long black object out of his

28

UNITED STATES DISTRICT COURT
For the Northern District of California

pants.  Although this object turned out to be a belt, petitioner maintains that the testimony of the victim's sister might have bolstered the perception that a reasonable person could have believed that the object was a weapon.

"A lawyer who fails adequately to investigate, and to introduce into evidence, [evidence] that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." Avila v. Galaza, 297 F.3d 911, 919 (9th Cir. 2002) (quoting Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999) (finding defense counsel's performance deficient because he failed to review or introduce at trial documents corroborating defense witness's testimony)); see also Lord, 184 F.3d at 1096 (finding defense counsel's performance deficient because he failed to interview or call at trial three witnesses who had told police and investigators that they saw the victim alive a day after the defendant allegedly killed her.).

The record indicates that after Ms. Jones made her statement during the preliminary hearing, she made a clarifying comment that she did not actually mean to encourage an actual "whipping" with a belt, but merely used the expression as a figure of speech.  As such, even if petitioner's counsel had inquired about this issue during cross-examination at trial, this would not have contributed to his defense, since the victim's sister would likely have presented the same explanation as before concerning the statement.  Therefore, the Court of Appeal's conclusion that defense counsel's cross-examination of Veopa Jones was not contrary to established Supreme Court authority and petitioner fails to meet his burden as for a writ under this claim.

C.    Insufficient Closing Argument

Petitioner contends trial counsel failed to argue imperfect self-defense in his closing argument to the jury and this resulted in the jury having to decide between a conviction for either murder or acquittal, without the possibility of considering a lesser charge of manslaughter. Respondent counters that the Court of Appeal's conclusion that petitioner's trial counsel made an adequate closing argument was not contrary to established Supreme Court authority.

17

The Supreme Court has indicated that tactical decisions by counsel during closing arguments are not to be second-guessed.

The right to effective assistance extends to closing arguments.  See Bell v. Cone, 535 U.S. 685, 701–702 (2002); Herring v. New York, 422 U.S. 853, 865 (1975).  Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage.  Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact,' id., at 862, but which issues to sharpen and how best to clarify them are questions with many reasonable answers.  Indeed, it might sometimes make sense to forgo closing argument altogether.  See Bell, supra, at 701–702.  Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas."

Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003).  "Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant."  Florida v. Nixon, 543 U.S. 175, 178 (2004).  However, that obligation does not require counsel to obtain defendant's consent to every tactical decision.  See Taylor v. Illinois, 484 U.S. 400, 417–18 (1988) (holding that an attorney has the authority to manage most aspects of the defense without first obtaining his client's approval).

Petitioner maintains that he asked trial counsel to argue imperfect self-defense in his closing argument to the jury, but that counsel did not do so.  Contents of a closing argument do not fall within the same category of other rights that the Supreme Court has stipulated belong exclusively to the defendant's "the ultimate authority" including, "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."  Jones v. Barnes, 463 U.S. 745, 751 (1983); Wainwright v. Sykes, 433 U.S. 72, 93 n.1 (1977) (Burger, C. J., concurring).

In the present instance, counsel's decision to solely focus on a self-defense verdict rather than argue for imperfect self-defense, was a tactical choice that is entitled to deference.  In any event, even if trial counsel had argued imperfect self-defense during closing arguments it is doubtful whether this would have significantly changed the outcome of petitioner's fate.  As already explained supra, since petitioner was unaware of the victim's previous weapons convictions and whether or not the victim was carrying a gun at the time of the shooting, it is unlikely that this played a role in petitioner's state of mind: a necessary prerequisite to an imperfect self-defense

18

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   theory.  This court concludes that there was no due process violation during the prosecutor's closing

2   argument.

3

4        D.        Petitioner's Other Claims of Ineffective Assistance of Counsel

5        In his motion for an evidentiary hearing, petitioner asserts that his counsel failed to (1)

6   adequately argue for the admission of the victim's prior weapons' possession convictions, and (2)

7   the cumulative effect of counsel's omissions made petitioner's conviction a denial of due process.

8        As discussed above, the court rejects petitioner's claim that counsel failed to adequately

9   investigate and call exculpatory and alibi witnesses.  Moreover, petitioner fails to demonstrate the

10  existence of a series of substantial errors that would warrant relief under the cumulative error

11  doctrine.  See Killian v. Poole, 282 F.3d 1204, 1211 (9th Cir. 2002) (holding that "even if no single

12  error were prejudicial, where there are several substantial errors, 'their cumulative effect may

13  nevertheless be so prejudicial as to require reversal.'") (quoting United States v. De Cruz, 82 F.3d

14  856, 868 (9th Cir. 1996)).

15       As petitioner fails to meet his burden for inadequate assistance of counsel under Strickland,

16  petition's motion for an evidentiary hearing is denied.  Petitioner has also failed to meet his burden

17  to support a petition for a writ of habeas corpus on grounds of ineffective assistance of counsel.

18

19

20

21

22

23

24

25

26

27

28

CONCLUSION

For the foregoing reasons, the court hereby DENIES petitioner's writ for habeas corpus relief.

IT IS SO ORDERED.

Dated: September 28, 2006

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

20

**ENDNOTES**

1.  57th refers to the 5700 block of Foothill Boulevard.

2.  Defendant acknowledged that the gun he was handed was the one in evidence.

3.  California Evidence Code § 1103(a) provides: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is:  (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character. [or] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)."

4.  Petitioner also suggests that the victim's sister, Veopa Jones, should have been impeached because he testified that she had never known the victim to carry a gun.  However, the petitioner misstates the record.  The victim's sister testified that she had never known the defendant to carry a gun.

21